**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------x
**CLEVELAND MARTIN,**

                Plaintiff,        Docket No. 08 CV 3975
                                            (JSR)(DFE)

                                              ECF CASE
        -against-

                                              Complaint
**AMGEN,**                                           Jury Trial

                Defendant.
---------------------------------x

    CLEVELAND MARTIN, plaintiff herein, through his attorney REGINALD A. BODDIE, ESQ., complains of the defendant, as follows:

**PRELIMINARY STATEMENT**

    Plaintiff, an outstanding regional salesperson of cancer products for a worldwide biotechnology company, brings this lawsuit challenging defendant's unlawful discriminatory actions in terminating his employment on the grounds of his race and/or color, and its refusal and/or failure to grant him leave and compensation under the Family and Medical Leave Act.

**<u>I. JURISDICTION</u>**

    1. Jurisdiction is conferred upon this Court by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)et. seq., Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2611 et. seq., as amended, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), and 28 U.S.C. § 1331.

    2. Venue resides in the Southern District of New York because the plaintiff's primary work territory was Bronx, New York.

## II. PARTIES

3.  Plaintiff, resides at 107 Highland Drive, Cortlandt Manor, NY 10567. He was employed as a senior bio-pharmaceutical sales representative with Amgen, a worldwide biotechnology company, until his termination on November 28, 2007.

4.  Defendant, Amgen, is a publicly traded stock corporation, and a worldwide biotechnology company, with more than five hundred employees, that regularly does business in the State of New York, including New York, Bronx and Westchester counties. The principal office of the corporation is located at 1 Amgen Drive, Thousand Oaks, California 91320. Amgen hires employees throughout the country to serve as local sales representatives of biotechnology products.

## III. FACTS

5.  Plaintiff is a black male, born on February 1, 1967.

6.  Plaintiff was hired as a senior biotechnology sales representative at Amgen in July 2002, after a successful career working as a pharmaceutical salesperson for Purdue Pharma, LP in Connecticut and New York City for four and one-half years, and Solvay Pharmaceutical for two and one-half years.

7.  Plaintiff was hired by defendant to sell products directed at fighting cancer.

8.  Plaintiff's job with defendant entailed contacting doctors in his assigned target area to sell various cancer products to.

9. As compensation for his services, plaintiff was provided a company car, salary and commissions, and a full benefit package, including stock options, retirement contributions, and medical care.

10. Commencing in July 2002, plaintiff was hired and assigned to the Long Island Oncology District in the Queens territory. This territory consisted of the borough of Queens, New York, and parts of Nassau County that are contiguous to Queens.

11. The Queens territory, to which plaintiff was assigned, had been one of the lowest performing territories of AMGEN in the country. The history of the territory was explained to plaintiff at the interview, and he gladly accepted the challenge.

12. Plaintiff worked the territory and contacted doctors who had not consistently seen an AMGEN representative for over two years.

13. Due to his success as a sales representative, plaintiff moved the territory from the bottom nationally to the top fifty percent by the fall of 2003, even without medicare coverage of the medications Aranesp and Neulasta.

14. In or about July 2003, another mirror representative, Lisa Dugan, a white female, was assigned to work with him.

15. Plaintiff's supervisor at this time was Edward Antonio, Senior District Oncology Sales Manager. Edward Antonio is a white male.

16. In April 2004, plaintiff requested a transfer to the

Bronx/Westchester territory. He and his supervisor agreed it would better serve him and the company if he transferred to the new territory to lessen his commuting time.

17. When plaintiff left the Queens territory in May 2004, he had helped his territory become the top 25% in the nation.

18. Among the central considerations for moving plaintiff to the Bronx/Westchester territory was that the territory had been performing poorly, that plaintiff was familiar with customers in the Bronx, and had a high success rate.

19. Plaintiff repeated his success in the new territory. At the end of 2005, the Bronx territory had become number one in the nation for Neulasta, and in the top ten for Aranesp.

20. In April 2006, Edward Antonio retired as the Senior District Sales Manager for the Long Island District. Eric Hedge, replaced him. Eric Hedge is a white male.

21. At this time, plaintiff's mirror representative was Debra Gaudioso, a white female, who had equal responsibility for conducting sales in the territory.

22. Plaintiff received his 2006 job performance evaluation in or about February 2007. In that evaluation, Mr. Hedge rated his job performance as exceptional.

23. Nevertheless, commencing June 2007, and continuing thereafter, Mr. Hedge began engaging in racially discriminatory treatment towards the plaintiff, including but not limited to, talking down to him, and berating him, without adequate reason or excuse.

24. Commencing June 2007, and continuing thereafter, on

numerous occasions, Mr. Hedge set up conference calls with plaintiff's partner, Ms. Gaudioso, Mr. Hedge's boss, and people in the home office, to discuss territory issues without including plaintiff. He apologized for this behavior on one occasion but continued the practice until plaintiff's termination.

25. In June 2007, while conducting a field contact with plaintiff and a client, on two occasions, Mr. Hedge screamed and cursed plaintiff and slammed the car door, after they visited with a client, even though plaintiff secured the contract.

26. Thereafter, Mr. Hedge went on field contacts with plaintiff, but often did not speak to him.

27. In September 2007, Mr. Hedge placed plaintiff on probation. However, he falsely alleged that plaintiff was being placed on probation due to his sales skills being "under par, weak organization, and lack of clinical knowledge about the product."

28. These were false premises for placing plaintiff on probation since plaintiff had successfully sold the product for five years, was very familiar with the product, an accomplished top salesman, and previously received excellent evaluations.

29. Defendant's actions for placing plaintiff on probation were racially motivated.

30. Further, evidencing racial animus, in October 2007, he did a power point presentation at a gathering of the Long Island Island and Manhattan District, at a meeting at the

Marriott in New York City in which he projected on the screen a shoot that read, "Neulasta The Last of the Great White Hope."

31. Plaintiff, one of only two blacks present, was offended by this action but did not complain because he had been placed on probation, and did not want to lose his job.

32. Commencing in or about October 2007 and thereafter, Mr. Hedge began failing to call plaintiff for follow-up, and only called his partner, a white female.

33. In November 2007, Mr. Hedge inquired of doctor clients of plaintiff, whether he was doing his job, while failing to make similar inquiry about plaintiff's partner.

34. On or about November 17, 2007, Mr. Hedge called plaintiff at 9 a.m. and screamed at him. Plaintiff asked him to stop doing this, and Mr. Hedge told him if he did not like it he should consider working somewhere else.

35. On November 26, 2007, plaintiff started experiencing a panic attack. Plaintiff advised Mr. Hedge that he was taking a vacation day for sickness, which was approved.

36. On November 27, 2007, plaintiff continued feeling stress, had a panic attack, and visited a physician. The doctor gave plaintiff a letter advising that plaintiff could not work for sixty days.

37. The same day, plaintiff informed Amgen Human Resources Department of his condition and the doctor's advice, and requested a leave pursuant to the Family Medical Leave Act. Plaintiff was referred to Matrix to file a claim. Plaintiff filed a claim with Matrix the same day, and it was was approved

and confirmed by letter.

38.  Plaintiff also notified Mr. Hedge the same day at 2:30 p.m. He said, "Hope you feel better. Call if you need to talk. Make sure you speak to Matrix and do all the necessary paperwork." Plaintiff advised him that he had already spoke to Matrix.  He said, "Let me know if you need anything.

39.  At approximately 3 p.m on November 28, 2008, Elizabeth Engel from the Human Resources Department sent plaintiff an email stating that she spoke to Mr. Hedge, they are both aware of plaintiff's illness, and make sure he completes all the paperwork for Matrix pertaining to his claim for medical leave and benefits.

40.  At approximately 6 p.m. on November 27, 2008, Mr. Hedge called plaintiff to tell him he is aware that plaintiff is not well, but they were supposed to meet Wednesday, and he would like to set up a call at 9 a.m. on November 28. Plaintiff explained that he had pending doctor appointments, and could not do it.

41.  On November 29, 2007,  Mr. Hedge continued to call plaintiff, ignoring the fact that he was sick.  The same day, Mr. Hedge also sent plaintiff a letter notifying him of his termination.

42.  Defendant terminated plaintiff, knowing he had requested and been approved for medical leave, without any regard for his medical and mental well-being. Thereafter, defendant persisted in denying plaintiff any medical benefits, leave benefits, or any other company benefits, including his

salary and other compensation.

43.   Plaintiff was ably qualified to work as a sales representative of medical products having received an enormous amount of training and job experience.

44.   Plaintiff possessed a bachelor's degree in Business Management.

45.  Plaintiff also had a record of success of moving his sales districts from the bottom in ranking to the top in the country.

46.  Plaintiff's work performance was satisfactory or better, and often exceeded his peers.

47.   Despite plaintiff's superior credentials and performance, on November 28, 2007, he was terminated.

48.  Other representatives in the district, who are white, were not treated similarly.

49.  Defendant's stated reasons for terminating the plaintiff are a pretext for the real reasons, and the real reasons are because of plaintiff's race and/or color.

50.   Defendant unlawfully discriminated against the plaintiff by terminating him on the ground of his race and/or color.

51.   Defendants' discriminatory actions were blatant and willful.

52.   Plaintiff suffered injury as a result of defendants' discriminatory actions, including but not limited to: loss of income, loss of reputation, humiliation, and mental and emotional distress.

53. Plaintiff timely filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) and New York State Commission on Human Rights.

54. The EEOC issued plaintiff a Right to Sue letter on or about March 31, 2008.

## IV.   FIRST CLAIM

55. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 54 above, as if fully set forth herein.

56. Defendant, its agents, servants and/or employees by their conduct alleged herein, intentionally, willfully and without justification, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq., as amended, 42 U.S.C. §2000 (e)(2), by failing to provide plaintiff equal terms and conditions of employment because of his race.

57. As a result of defendant's actions, plaintiff suffered termination of employment, loss of reputation, lost wages, humiliation, severe mental distress, and anguish.

## V. SECOND CLAIM

58. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 57 above, as if fully set forth herein.

59. Defendant, its agents, servants and/or employees by their conduct alleged herein, intentionally, willfully and without justification, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq., as amended, 42 U.S.C. §2000(e)(2), by failing to provide plaintiff equal terms and

conditions of employment because of his color.

60. As a result of defendant's actions, plaintiff suffered termination of employment, loss of reputation, lost wages and other benefits and compensation, humiliation, severe mental distress, and anguish.

## VI. THIRD CLAIM

61. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 60, as if fully set forth herein.

62. Defendants, its agents, servants and/or employees, by their conduct alleged herein, in intentionally, willfully and without justification, depriving plaintiff of his rights, pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 et. al., by denying him medical and monetary benefits provided for by said Act, interfering with, restraining, and denying his exercise of leave under the Act, and terminating him upon application for same.

63. As a result of defendant's actions, plaintiff suffered termination of employment, loss of reputation, lost wages and other benefits and compensation, humiliation, severe mental distress, and anguish.

## VII. FOURTH CLAIM

64. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 63, as if fully set forth herein.

65. Defendants, its agents, servants and/or employees, by

their conduct alleged herein, intentionally, willfully and without justification, did deprive plaintiff of his rights, privileges and immunities secured by the Constitution and the laws of the United States, by failing to grant him employment terms and conditions equal to other employees because of his race, in violation of 42 U.S.C. §1981.

66. As a result of defendant's actions, plaintiff suffered termination of employment, loss of reputation, lost wages and other benefits and compensation, humiliation, severe mental distress, and anguish.

## VIII. FIFTH CLAIM

67. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 66, as if fully set forth herein.

68. Defendant unlawfully discriminated against the plaintiff by denying him equal terms and conditions of employment because of his race, in violation of Section 296 et. seq. of the New York Executive Law (Human Rights Law).

69. As a result of defendant's actions, plaintiff suffered reputation, lost wages, humiliation, severe mental distress, and anguish.

## IX. SIXTH CLAIM

70. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 69, as if fully set forth herein.

71. Defendant unlawfully discriminated against the plaintiff by denying him equal terms and conditions of

employment because of color, in violation of Section 296 et. seq. of the New York Executive Law (Human Rights Law).

72. As a result of defendant's actions, plaintiff suffered loss of reputation, lost wages and other benefits and compensation, humiliation, severe mental distress, and anguish.

## TRIAL BY JURY

73. Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff demands judgment against the defendant awarding her the following relief:

a. Grant plaintiff declaratory relief finding that plaintiff was unlawfully discriminated against by the defendants because of his race and color, in violation of Title VII, and that defendants violated the Family and Medical Leave Act, as amended;

b. Grant plaintiff compensatory damages in the sum of Two Million Dollars;

c. Award plaintiff punitive damages in the sum of Four Million Dollars;

d. Award plaintiff attorneys fees; and

e. Grant plaintiff such other and further relief as this Court may deem just and proper.

Dated:    New York, New York
          April 16, 2008

                                    _____/ S/_____
                                    Reginald A. Boddie, Esq.
                                    RB 0698)

```
Attorney for Plaintiff
19 Fulton Street, Suite 408
New York, NY 10038
(212) 406-8032
```

**VERIFICATION**

STATE OF NEW YORK )
                  :ss
COUNTY OF NEW YORK)

I, the undersigned, being duly sworn, deposes and says:

I am the plaintiff herein, and have read the foregoing Complaint, and know the contents thereof.  The same is true to my own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters I believe it to be true.

/s/
_____
CLEVELAND MARTIN

Sworn to before me this
23rd day of April 2008
      /s/
_____
Notary Public
Reginald Boddie
No. 02B04865482
Qualified in New York County
Commission Expires June 23, 2010

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
CLEVELAND MARTIN,
                     Plaintiff,              Docket No.

        -against-
                                              Complaint
AMGEN,                                        Jury Trial

                     Defendant.
-----------------------------------x
```

_____

                            COMPLAINT

_____


            REGINALD A. BODDIE, ESQ.(RB 0698)
            Attorney for Plaintiff
            19 Fulton Street, Suite 408
            New York, NY 10038
            (212) 406-8032